UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ROSARIO DIEGO JIMENEZ,

      Plaintiff,

v.

MARIA LUISA de GREGORIO, et. al.,

      Defendants.

CIVIL ACTION

NO. 1:03-CV-1638-BBM

## O R D E R

This family dispute, involving a will and a substantial sum of money, is before

the court on Rosario Diego Jimenez's motion to remand [Doc. No. 3-1], as well as

various other motions seeking clarification of procedural issues [Doc. Nos. 2-1, 7-1,

10-1, 10-2, 15-1, 15-2, 16-1].

## I.    Factual and Procedural Background

On May 9, 2003, Rosario Diego Jimenez ("Jimenez" or "the plaintiff"), in her

capacity as temporary administrator of the estate of her mother, Natividad Jimenez

del Rey ("the decedent"), filed the instant action in Fulton County Superior Court

against fifteen individuals and twenty-five entities.  In her complaint, Jimenez

alleges that her brother, Gregorio Diego Jimenez ("GDJ"), in conjunction with his

children, misappropriated and squandered their mother's assets after the death of

their father. Jimenez claims that GDJ accomplished this misappropriation through various corporate entities established and controlled by GDJ and his children. Indeed, Jimenez's complaint alleges a far-ranging conspiracy involving at least forty defendants.  According to the plaintiff, these concerted actions of GDJ and his cohorts significantly depleted the decedent's estate, reducing the estate's assets from hundreds of millions of dollars to fifteen million dollars.

In her thirteen count complaint, Jimenez seeks to discover how the assets of her mother's estate were utilized prior to her mother's death.  She alleges various causes of action based on Georgia law, including claims for conversion, fraud, breach of fiduciary duty, unjust enrichment, and violations of the Georgia Racketeer Influenced and Corrupt Organizations Act ("Georgia RICO").  Jimenez obtained authority to pursue this lawsuit when the Fulton County Probate Court issued an order asserting jurisdiction over the decedent's estate and appointing Jimenez as temporary administrator.  The Temporary Letters of Administration granted to Jimenez appoint her for the exclusive purpose of preserving these claims for her mother's estate.  The Georgia probate court's decision to assert jurisdiction over the decedent's estate is currently on appeal in the Georgia court system.

Importantly for the issues pending before this court, Jimenez's original complaint alleges violations of Georgia's RICO statute, Ga. Code Ann. §§ 16-4-1, et

seq. As an element of Jimenez's RICO claim, the plaintiff contends that the defendants performed fraudulent wire transfers in violation of federal law. Based on this federal allegation, the defendants removed Jimenez's lawsuit from Fulton County Superior Court to this court. However, on June 11, 2003 at approximately 8:30 a.m., before any of the defendants filed an answer or responsive pleading, and before the defendants filed their notice of removal, Jimenez filed an amended complaint in Fulton County Superior Court. In the amended complaint, the plaintiff withdraws her cause of action under Georgia's RICO statute, leaving twelve counts based entirely on state law.

Immediately upon filing the amended complaint, counsel for the plaintiff telephoned defense counsel to inform the defendants of Jimenez's amendment. Following this telephone conversation, Jimenez's counsel faxed a file-stamped copy of the amended complaint to defense counsel. Notwithstanding the withdrawal of the Georgia RICO count, defendants filed a notice of removal later that day, claiming as their sole basis for removal that Jimenez's Georgia RICO count contains a substantial federal question. In her motion to remand, Jimenez points to her amended complaint and asks the court to return her lawsuit to Fulton County Superior Court. The defendants contest this action, arguing that a sufficient federal

question exists for this court to exercise jurisdiction over Jimenez's lawsuit. The court now resolves the outstanding motion to remand.

## II.    Standard for Removal

Pursuant to 28 U.S.C. § 1441(b), "[a]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." Therefore, when an action is removed from state court, the district court must first determine whether it has original jurisdiction over the plaintiff's claims. Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1556-57 (11th Cir. 1989). "[R]emoval jurisdiction is no exception to a federal court's obligation to inquire into its own jurisdiction." University of S. Ala. v. American Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999). If there is jurisdiction, then removal is appropriate, and the court may proceed to the merits of the case. However, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to state court. 28 U.S.C. § 1447(c). This provision is mandatory and may not be disregarded. International Primate Prot. League v. Administrators of Tulane Educ. Fund, 500 U.S. 72, 87-89 (1991), superseded on other grounds by, 28 U.S.C. § 1442(a)(1). Importantly, "a federal court must remand for lack of subject matter

-4-

jurisdiction notwithstanding the presence of other motions pending before the court." University of S. Ala., 168 F.3d at 411.

Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941). Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court. Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994). "A presumption in favor of remand is necessary because if a federal court reaches the merits of a pending motion in a removed case where subject matter jurisdiction may be lacking it deprives a state court of its right under the Constitution to resolve controversies in its own courts. " University of S. Ala., 168 F.3d at 411. As such, the burden of establishing subject matter jurisdiction falls on the party invoking removal. Hobbs v. Blue Cross Blue Shield of Ala., 276 F.3d 1236, 1242 (11th Cir. 2001); Pacheco de Perez v. AT & T Co., 139 F.3d 1368, 1373 (11th Cir. 1998).

For removal based on federal question jurisdiction, a defendant must demonstrate that the civil action is "founded on a claim or right arising under the Constitution, treaties, or laws of the United States." 28 U.S.C. § 1441(b). Accordingly, for removal to be proper, "federal law [must] create[] the cause of action or [] the plaintiff's right to relief [must] necessarily depend[] on resolution of

a substantial question of federal law." Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 28 (1983). Any assessment of jurisdiction is limited by the "well-pleaded complaint rule, which provides that the plaintiff's properly pleaded complaint governs the jurisdictional determination." Blab T.V. of Mobile, Inc. v. Comcast Cable Communications, Inc., 182 F.3d 851, 854 (11th Cir. 1999). Under this rule, a claim does not arise under federal law unless a federal question is presented on the face of the plaintiff's complaint. Franchise Tax Bd., 463 U.S. at 11.

Thus, the court's inquiry regarding federal question jurisdiction is limited to the four corners of the complaint. Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). Since the plaintiff is the master of his or her complaint, "he or she may avoid federal jurisdiction by exclusive reliance on state law." Id. Notably, the court ascertains the propriety of removal by examining the complaint as it exists at the time of removal. Pullman Co. v. Jenkins, 305 U.S. 534, 537 (1939); Poore v. American-Amicable Life Ins. Co., 218 F.3d 1287, 1290-91 (11th Cir. 2000) (stating that the district court "must determine whether it had subject matter jurisdiction at the time of removal"); In re Carter, 618 F.2d 1093, 1101 (5th Cir. 1980) (stating that "[i]t is a fundamental principle of law that whether subject matter jurisdiction exists is a question answered by looking to the complaint as it existed at the time the petition for removal was filed").

In the instant action, Jimenez's original complaint contained a Georgia RICO count alleging violations of the federal wire fraud statute.  However, before any defendant filed an answer, Jimenez exercised her right to amend her complaint.  See Fed. R. Civ. P. 15(a) (allowing a party to "amend the party's pleading once as a matter of course at any time before a responsive pleading is served"); Ga. Code Ann. § 9-11-15(a) (allowing party to "amend his pleading as a matter of course and without leave of court at any time before the entry of a pretrial order").  Indeed, she did so at 8:30 a.m. on June 11, 2003, the same day that the defendants noticed their intention to remove the action.  Undisputedly, however, Jimenez amended her complaint in the morning, prior to the defendants' notice of removal.  Because the court is constrained to review the complaint as it existed at the time of removal, the court refers to the amended complaint to ascertain the propriety of removal. Pullman Co., 305 U.S. at 537; Poore, 218 F.3d at 1290-9; Carter, 618 F.2d at 1101.  As no federal question appears on the face of the amended complaint, this court does not have subject matter jurisdiction,[1] and Jimenez's complaint must be remanded to Fulton County Superior Court.  See R.K. Servs. v. Spectrum Stores, Inc., 125

---

[1] All parties concede that diversity jurisdiction is unavailable because Jimenez and several defendants are residents of the State of Georgia.  Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 292 F.3d 1334, 1337 (11th Cir. 2002) (holding that for diversity jurisdiction to exist, "each defendant must be diverse from each plaintiff"); Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998) (same).

F. Supp. 2d 479, 480 (M.D. Ala. 2001) (referring to amended complaint and remanding case where defendant filed notice of removal on same day that plaintiff amended complaint because plaintiff amended complaint naming nondiverse defendants earlier in the day than defendants filed notice of removal).

## III.   Temporary Administrator Status

To avoid the consequences of these facts and to preserve federal jurisdiction, the defendants argue that Jimenez was not entitled to amend her complaint.  In making this argument, the defendants contend that, as temporary administrator, Jimenez must preserve the assets of her mother's estate, including the potential claim pursuant to Georgia's RICO statute.  The defendants rely on a variety of Georgia cases describing limitations on the power of temporary administrators.  In Georgia, a temporary administrator's power is:  (1) "subject to limitation," Resseau v. Bland, 268 Ga. 634, 635, 491 S.E.2d 809, 811 (1997); (2) restricted to "protection and preservation the estate," Ga. Code Ann. § 53-7-4; (3) "largely 'preservative,'" Resseau, 268 Ga. at 635, 491 S.E.2d at 811; (4) "to collect, preserve, and deliver to the permanent administrator," American Surety Co. v. Jeffries, 70 Ga. App. 408, 28 S.E.2d 355, 359 (1943); and (5) "strictly limited by statute," Arnold v. Freeman, 181 Ga. 654, 183 S.E. 811, 813 (1936).   Moreover, a temporary administrator is undisputedly without power to distribute the assets of the estate. Deller v. Smith, 250 Ga. 157, 161, 296 S.E.2d 49, 52 (1982); Furr v. Jordan, 196 Ga. 862, 874, 27 S.E.2d

861, 868 (1943); <u>Baumgartner v. McKinnon</u>, 137 Ga. 165, 166, 73 S.E. 518, 519 (1911)

<u>Neal v. Boykin</u>, 129 Ga. 676, 59 S.E. 912 (1907).   This power is reserved for the

permanent administrator.   <u>Id.</u>

Despite the litany of cases cited by the defendants describing general limits

on the power of temporary administrators, none of the cases cited establishes that

a temporary administrator is without power to amend a complaint filed to preserve

the assets of the estate.   Although the defendants attempt to analogize amending the

complaint to distributing the estate's assets, this analogy fails as no case law

substantiates the analogy.   Importantly, none of the cases cited by the defendants

addresses the right and power of a temporary administrator to define the claims

pursued to preserve and protect the estate.   Instead, Georgia law suggests that

temporary administrators have some discretion in determining what claims to

prosecute.   <u>See</u> Ga. Code Ann. § 53-6-31 (stating that "temporary administrator **may**

bring an action for the collection of debts or for personal property") (emphasis

added); <u>Deller</u>, 250 Ga. at 160, 296 S.E.2d at 52 (finding that "a temporary

administrator **may** sue for the collection of debts or for the personal property of the

intestate") (emphasis added).   Such discretion is curtailed, not by prohibiting the

amendment of a complaint, but by the requirement that the temporary administrator

post a bond, such that decisions harming the estate can be remedied through the

funds posted by the temporary administrator. See Ga. Code Ann. § 53-6-50(a); Furr, 196 Ga. at 875-76, 27 S.E.2d at 868-69; American Surety Co., 70 Ga. App. at 408, 28 S.E.2d at 359.

Reference to the Temporary Letters of Administration ("the letters") issued to Jimenez by the Fulton County Probate Court does not compel a different result. The letters empower Jimenez to institute the case *sub judice*, however, they do not purport to define the claims the plaintiff may file. Instead, the letters incorporate flexibility and discretion, allowing Jimenez to file "such complaint or complaints as [Jimenez] believes is or are necessary for the preservation, protection and marshaling of the assets of the Estate." Doc. No. 9, Exh. B, at 2. Although the Probate Judge recognized that potential claims exist, and that the "only asset of the Estate as yet known in this State is the complaint or complaints to be filed," he specifically reserved comment on the merits of the claims proposed by Jimenez. Id. at 4 (stating "nothing contained in this Order or in the Letters is to be construed in any way as an expression of opinion as to the reasonable basis of any such claim"). Instead, the Probate Judge left the decision to Jimenez as to what specific claims should be pursued. Contrary to the defendants' assertion, the plaintiff need not seek the approval of the probate court prior to filing or amending a complaint; rather, Jimenez need only "file information copies of all such complaint or complaints with"

the probate court. Id. at 2. Therefore, the plaintiff's ability to amend the complaint filed on behalf of her mother's estate is not restricted by the letters issued by the probate court.

Notably, accepting the defendants' position would lead to unreasonable results. If amending a complaint equated to distributing an asset of the estate, a temporary administrator could not dismiss claims proving meritless after discovery nor could the administrator dismiss defendants exculpated by evidentiary investigation. Indeed, the defendants' position that a temporary administrator may not amend her complaint without divesting the estate of assets would force temporary administrators to spend money, time, and effort pursuing claims without a reasonable basis, leading to the unnecessary dissipation of assets. In this regard, the court cannot help but note the contradictory nature of the position taken by the defendants. At the same time that they claim Jimenez may not herself dismiss the Georgia RICO claim, they argue that the claim is without merit, subject to challenge "by motion to dismiss or as may otherwise by appropriate." Doc. No. 9, at 9 n.10; see also Doc. No. 9, at 3 n.1. As such, the defendants argue that Jimenez's claim is meritless, but assert that she may not seek to delete the claim herself, rather she must await challenge by the defendants. Preventing Jimenez's amendment, then, would lead to the expenditure of unnecessary judicial and legal resources.

Therefore, resolving all doubts in favor of remand, the court finds that Jimenez, as temporary administrator, has discretion in determining what claims to pursue for the benefit of the decedent's estate.  <u>Burns</u>, 31 F.3d at 1095.  Neither Georgia law nor the letters restrict Jimenez's power to amend.  By amending the complaint prior to the defendants' notice of removal, Jimenez effectively deleted the Georgia RICO claim—the sole basis for federal jurisdiction.  Without a federal question, the defendants' removal attempt fails.  This court is without subject matter jurisdiction, and the lawsuit must be remanded to Fulton County Superior Court. 28 U.S.C. § 1447(c).

## IV.    Substantial Federal Question

Even if this court were to conclude that Jimenez was without power to amend her complaint, such that the Georgia RICO claim remained, the court would still conclude that it lacks subject matter jurisdiction.  The defendants contend that a substantial federal question is raised by Jimenez's state RICO allegations.  Although the plaintiff does not seek to recover under a federal statute directly, she does allege violations of the federal wire fraud statute as one of the necessary elements, or predicate acts, of her state RICO claim.  Because the state claim hinges on the resolution of a federal question — whether the defendants violated a federal criminal statute—the defendants believe federal question jurisdiction exists.

-12-

To ascertain the validity of the defendants' argument, the court returns to the general proposition that "a case arises under federal law only if it is federal law that creates the cause of action." Diaz v. Sheppard, 85 F.3d 1502, 1505 (11th Cir. 1996). Indeed, in Merrell Dow Pharmaceuticals, Inc. v. Thompson, the Supreme Court held that where Congress determines that there is no private right of action under a federal statute, a complaint alleging violation of that statute as an element of a state cause of action fails to create federal question jurisdiction. 478 U.S. 804, 819 (1986). Even though Merrell Dow recognized that there may be an exceptional case in which federal question jurisdiction is available, 478 U.S. at 808-09, this holding does not disturb "the long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." Id. at 813.

The Eleventh Circuit has followed these principles, noting that in narrow circumstances "jurisdiction may be available if a substantial, disputed question of federal law is a necessary element of a state cause of action." Jairath v. Dyer, 154 F.3d 1280, 1282 (11th Cir. 1998). The Court of Appeals has concurred that, "[a]lthough a case may arise under federal law where the vindication of a right under state law necessarily turn[s] on some construction of federal law, the mere presence of a federal issue in a state cause of action does not automatically confer

-13-

federal-question jurisdiction." Ayres v. General Motors Corp., 234 F.3d 514, 517-18 (2000) (internal citations and quotations omitted); see also Hill v. Marston, 13 F.3d 1548, 1549-50 (11th Cir. 1994).

In arguing that federal question jurisdiction exists in the case *sub judice*, the defendants rely heavily on the Eleventh Circuit's opinion in Ayres v. General Motors Corp., 234 F.3d at 514. In Ayres, the plaintiffs brought a state court action against General Motors and an automobile component manufacturer under Georgia's RICO statute. Id. at 516. The Ayres plaintiffs alleged that the defendants violated federal mail and wire fraud statutes by failing to report an auto component defect as required by the National Traffic and Motor Vehicle Safety Act. Id. at 516-17. After the case was removed to federal court, the plaintiffs filed a motion to dismiss for lack of federal jurisdiction. Id. at 517. The Ayres court began its analysis of the motion to dismiss by discussing the general principle of jurisdiction, namely that the mere presence of a federal issue in a state law cause of action does not confer federal question jurisdiction. Id. at 517-18. However, the Ayres court ultimately found that, under the exceptional facts of that case, federal question jurisdiction existed. Id. at 519.

In the instant action, the defendants focus on the holding in Ayres and point out that, in finding that there was "sound basis for removal jurisdiction," the

-14-

Eleventh Circuit held that the plaintiffs' claim for violation of Georgia's RICO statute presented a federal question. Id. They also cite to the Ayres court's statement that "[a] violation of the federal mail and wire fraud statutes is an essential element of the Plaintiffs' cause of action, the proof of which involves resolution of a substantial, disputed question of federal law." Id. at 518 (citing Jairath, 154 F.3d at 1282). While the defendants are understandably encouraged by the holding in Ayres, further analysis reveals that the facts in Ayres are distinguishable from the instant litigation.

Notably, the Ayres court made it clear that its conclusion was limited to the unique facts of the case. Specifically, the Eleventh Circuit stated that, "to find federal question jurisdiction in this case, we need not go so far as to hold that *every* state RICO cause of action which depends upon proving, as necessary predicate acts, a violation of the federal mail and wire fraud statutes establishes federal question jurisdiction." Id. at 519.  In a footnote appended to that statement, the Eleventh Circuit explicated, "[t]hus, we do not so hold." Id. at 519 n.10. Instead, the Ayres court focused on the previously unexplored interplay between the National Traffic and Motor Vehicle Safety Act and the federal mail and wire fraud statutes. Id. at 519. Indeed, the mail and wire fraud allegations in Ayres rested entirely upon interpretation of the National Traffic and Motor Vehicle Safety Act. Id. Given this fact, the court found that the interplay between the two federal statutes created a

federal question "substantial enough to confer federal question jurisdiction." Id.

Therefore, the Eleventh Circuit found federal question jurisdiction in Ayres:

> [B]ecause the case involves both (1) the necessity for Plaintiffs to prove, as an essential element of their state law cause of action, the existence of federal mail and wire fraud crimes as predicate acts, which crimes would be enforceable in a federal civil RICO cause of action; and (2) the fact that proof of the alleged federal mail and wire fraud crimes involves a very substantial federal question.

Id. at 520. "Because [the Eleventh Circuit] rel[ied] on *both* of the facts mentioned in

the text, [the Eleventh Circuit did] not in [Ayres] decide whether either, by itself, is

sufficient to confer federal question jurisdiction." Id. at 520 n.11.

Accordingly, the Eleventh Circuit has not yet resolved the question of whether

alleging violations of the federal wire fraud statute as predicate acts to a Georgia

RICO claim, without more, is sufficient to confer federal question jurisdiction on this

court. Id. at 520 nn. 11, 12. Even the defendants recognize this limitation of the

Ayres holding, stating that "Ayres did not, however, purport to define the

boundaries of removal based upon the federal question of federal mail and wire

fraud as predicate acts for a state RICO violation." Doc. No. 9, at 18. The defendants

further admit that "[c]learly the case law in this circuit on the propriety of removal

in situations such as that at bar is in the early stages of development." Id. Finally,

the defendants properly characterize their question as one "of first impression" and

encourage the court to find a federal question sufficient to assert subject matter jurisdiction over the case. Id.

Despite the defendants' argument, the standards applicable to removal jurisdiction prevent this court from expanding the Ayres holding. Importantly, removal statutes are to be construed narrowly and any doubts about removal are to be resolved in favor of remand. Allen v. Christenberry, 327 F.3d 1290, 1293 (11th Cir. 2003). In the instant action, there is some doubt as to whether the Ayres holding governs in the absence of a federal question as substantial as the one presented in Ayres. Given this doubt about the propriety of removal, this court is constrained to resolve the issue in favor of remand. Id. Accordingly, the court concludes that Jimenez's allegations of federal wire fraud as predicate acts in her Georgia RICO cause of action are insufficient to confer federal subject matter jurisdiction on this court. See Graham Commercial Realty, Inc. v. Shamsi, 75 F. Supp. 2d 1371 (N.D. Ga. 1998) (O'Kelley, J.); Patterman v. Travelers Inc., 11 F. Supp. 2d 1382 (S.D. Ga. 1997); see also In re United Container LLC, 284 B.R. 162 (S.D. Fla. 2002). Thus, this case must be remanded to Fulton County Superior Court.[2]

---

[2] Jimenez requests the court award her fees pursuant to 28 U.S.C. § 1447(c). The court declines to do so. See Hobbs, 276 F.3d at 1243. Contrary to the plaintiff's contention, the court does not believe that the defendants removed this action in bad faith or to cause delay. Instead, the defendants took the steps they believed were necessary to protect their clients. Given the uncertainties in this area of the law, and the complicated nature of this litigation, the court declines to award the plaintiff the costs and attorneys' fees incurred in

## V.    <u>Conclusion</u>

The court hereby finds that it is without subject matter jurisdiction and, therefore, GRANTS Jimenez's motion to remand [Doc. No. 3-1].  Because subject matter jurisdiction is lacking, the court is without power to resolve the other motions outstanding on the docket [Doc. Nos. 2-1, 7-1, 10-1, 10-2, 15-1, 15-2, 16-1].  This action is REMANDED to Fulton County Superior Court.

IT IS SO ORDERED, this 12th day of August, 2003.


BEVERLY B. MARTIN
UNITED STATES DISTRICT JUDGE

---

opposing removal.  See Thompson v. Victoria Fire & Cas. Co., 32 F. Supp. 2d 847 (D.S.C. 1999).